# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| S.L., THE MINOR STUDENT,[1] THROUGH THE PARENTS, SH.L. AND T.L., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:24-cv-00601 |
|  | ) | Judge Aleta A. Trauger |
| RUTHERFORD COUNTY BOARD OF EDUCATION d/b/a RUTHERFORD COUNTY SCHOOLS, | ) ) ) | |
|  | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff S.L., through her parents, Sh.L. and T.L. (collectively, the "parents"), filed this action on May 14, 2024, challenging in part the relief provided by the Tennessee Secretary of State Administrative Law Judge ("ALJ") in a Final Order entered on April 8, 2024 ("Final Order") (Doc. No. 12-1). (*See generally* Complaint, Doc. No. 1). Presently before the court is S.L.'s Motion to Invoke Stay Put Placement through Preliminary Injunction (Doc. No. 12), under 20 U.S.C. § 1415(j). The defendant, Rutherford County Board of Education d/b/a Rutherford County Schools ("RCS"), has filed a Response (Doc. No. 15), and the plaintiff has filed a Reply (Doc. No. 20). Following the recent issuance of *J.L. v. Williamson County Board of Education*, No. 23-5704, 2024 WL 3634456, at *4 (6th Cir. Aug. 2, 2024) (6th Cir. Aug. 2, 2024), the plaintiff filed a Supplemental Brief. (Doc. No. 22.) For the reasons set out herein, the motion will be granted in

---

[1] S.L., who is now 19 years old, is not a "minor." (*See* Doc. No. 1, Complaint ¶ 8.) Due to her significant disabilities, her parents have a conservatorship for their daughter and are co-conservators. (Doc. No. 15-3, Hr'g Tr. 88.)

one small respect but otherwise denied.

## I.  BACKGROUND

### A.  The IDEA and the *Honig* Process

The Individuals with Disabilities Education Act ("IDEA" or "Act"), 20 U.S.C. § 1400 *et seq.*, "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (citing 20 U.S.C. §§ 1401(3)(A)(i), 1412(a)(1)(A)). A FAPE consists of both "special education and related services" that are "specially designed" to address a child's "unique needs" and to provide the "supportive services" necessary to ensure that a child "benefit[s] from" his special education. 20 U.S.C. §§ 1401(9), (26), (29). When a state accepts funding under the IDEA, "[a]n eligible child . . . acquires a 'substantive right'" to a FAPE. *Fry*, 580 U.S. at 158 (quoting *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)).

The "primary vehicle" for implementing FAPE is the individualized educational program, or IEP. *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see also* 20 U.S.C. §§ 1412(a)(4), 1414(d). The IEP is a "written statement" developed by a child's "IEP Team," comprised of parents, teachers, and school officials. 20 U.S.C. § 1414(d)(1)(A)(i), (B). The IEP must identify the child's particular educational needs, set measurable goals for the child's progress, create a plan for meeting those goals, and outline the supplementary aids and services the child needs to meet those goals. *Id.*. § 1414(d)(1)(A). The IEP Team develops the IEP by considering the child's strengths, the parents' concerns, the results of the child's initial or most recent evaluation, and the child's academic, developmental, and functional needs. *Id.* § 1414(d)(3)(A). The IEP Team must review a child's IEP at least annually. *Id.* § 1414(d)(4)(A)(i). An IEP is effective for a set period, typically a school year or semester.

The IDEA also establishes various procedural safeguards "to guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education," including input into the IEP, "and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311–12; *see generally* 20 U.S.C. § 1415. Among other safeguards, the parents are entitled to receive prior written notice about any change in the educational placement or FAPE and to file an administrative due process complaint relating to the child's educational placement or FAPE. 20 U.S.C. § 1415(b)(3), (b)(6). Filing a due process complaint triggers the setting of a due process hearing conducted by the state or local educational agency, which results in a final decision appealable to state or federal court. *Id.* § 1415(f)(1)(A), 1415(i)(2)(A).

Congress also recognized that a child's education should not be put on pause pending the outcome of a lawsuit. In an effort to prevent such an eventuality, one of the procedural safeguards afforded by the IDEA is what has become known as the "stay-put" provision, 20 U.S.C. § 1415(j). The stay-put provision generally requires that, "during the pendency of any proceedings initiated under the Act, unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree, 'the child shall remain in the then current educational placement.'" *Honig*, 484 U.S. at 323 (quoting the provision now at 20 U.S.C. § 1415(j)) (emphasis omitted); *see also* 34 C.F.R. § 300.518(a). The provision represents Congress's policy determination that, "regardless of whether their case is meritorious," children with disabilities must remain in their then-current educational placement until the dispute is resolved. *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996).

**B.     This Case**

It is undisputed that S.L. suffers from multiple disabilities, including autism, intellectual disability, verbal apraxia, and seizure disorder. She is now 19 years old. She was enrolled at Siegel High School, her zoned school within RCS, for the 2021–2022 school year, when she was 16 years

old. That placement appears to have been pursuant to an IEP. She remained at Siegel High through the spring of 2022 under an IEP in effect from February 2022 through February 2023. In July 2022, however, S.L.'s parents unilaterally placed S.L. at Norris Academy, an acute residential treatment facility. Norris discharged S.L. in December 2022, and S.L. returned to Siegel High in January 2023.

Because her IEP was set to expire in February 2023, an IEP team began working on an updated IEP. For a variety of reasons not relevant at this point, an appropriate functional behavioral assessment ("FBA") and other necessary assessments were not performed at that time. The IEP team, which included the plaintiff's parents, who were represented by an attorney during the IEP meetings, came up with an IEP in February 2023 pursuant to which S.L. was to be placed at Rutherford Academy, a private, local, day school offering services to students with severe disabilities, where S.L. would have had a one-on-one educational assistant at all times. (Doc. No. 19-2, Feb. 2023 IEP.) S.L.'s parents objected to the placement, noting that they had received a copy of the draft IEP at least 48 hours prior to the IEP meeting, had "been informed of and underst[oo]d [their] rights," and had "received a copy of the notice of procedural safeguards." (Doc. No. 19-3, at 1.)

The parties dispute whether the plaintiff's parents received a Prior Written Notice of the decision to transfer S.L.'s placement to Rutherford Academy and whether they effectively challenged the IEP by filing a timely due process complaint against the local educational agency and requesting a hearing. What is undisputed is that the parents filed an administrative due process complaint and request for a due process hearing on March 13, 2023 and a federal lawsuit shortly

thereafter,[2] challenging the implementation of the IEP on the basis that the parents had not received adequate advance notice of the change in placement. Following mediation on June 8, 2023, the parties entered a written Settlement Agreement, which provided that:

> (1) S.L. would "remain" at the 6-week summer term at Illuminate Academy ("Illuminate"), in which she was already enrolled, and RCS would pay for it as "compensatory education";

> (2) Illuminate would "be the student's educational placement beginning Fall 2023," and RCS would be responsible for payment of S.L.'s tuition there "as long as the student is placed there, but no later than the student's 22nd birthday";

> (3) although the "current IEP" states that S.L. should receive the assistance of a one-on-one educational assistant, "the student's parents do not wish her to have a one-on-one educational assistant," but if one were needed in the future, RCS would pay for it;

> (4) RCS would pay attorney's fees and an additional sum "for compensatory services for special education services going forward";

> (5) the parties agreed that the Settlement Agreement fully resolved the "current Due Process case," which would be dismissed, and the parents agreed to voluntarily dismiss the pending federal lawsuit as well; and

> (6) the parties released all claims then existing against each other.

(Doc. No. 12-3, Settlement Agreement ¶¶ 1–2, 4, 7–11.) The parties apparently never reached an agreement as to a new IEP, but the February 2023 IEP was never agreed upon, modified, or withdrawn.

During S.L.'s attendance at Illuminate's summer program, Illuminate determined that S.L. could not safely attend Illuminate in the fall of 2023 without a one-on-one educational assistant. (Doc. No. 15-3, Hr'g Tr. 54.[3]) Although RCS agreed to fund the service and made significant

---

[2] Complaint, *Langford v. Rutherford Cty. Schs.*, No. 3:23-cv-00317 (M.D. Tenn. April 10, 2023), Doc. No. 1.

[3] The parties filed a condensed copy of the Hearing Transcript. The court refers to the transcript by its original pagination.

efforts to assist Illuminate in hiring an aide, Illuminate was either unwilling or unable to hire the necessary assistant and did not authorize RCS to hire one. Because Illuminate also would not permit S.L. to attend Illuminate without a one-on-one aide, S.L. did not enroll at Illuminate in the fall of 2023 and has never actually attended school at Illuminate.

RCS declined to permit S.L. to return to Siegel and took the position that the February 2023 IEP, with the Rutherford Academy placement, remained in effect. S.L.'s parents, on the other hand, have consistently maintained that they never agreed to placement at Rutherford Academy, and they declined interim homebound services while seeking out other private options.[4] All of this means that, aside from the 2023 summer program at Illuminate, S.L. has not been enrolled in any school, or received any educational services, since March 2023.[5]

S.L., through her parents, filed a second due process complaint in November 2023.[6] After a two-day hearing that resulted in a 400-page transcript, the ALJ issued a Final Order on April 8, 2024, granting in part the relief sought by the petitioners. Specifically, the ALJ found that the petitioners met their burden of proving that RCS did not provide S.L. with FAPE from June 2023[7] through March 2024, because "RCS violated its obligation to adequately evaluate S.L. to properly develop an IEP to enable S.L. to make progress appropriate to her circumstances." (Doc. No. 12-

---

[4] Testimony at the due process hearing indicates that the parents refused compensatory services and homebound services during the pendency of the due process proceedings. (*See* Hr'g Tr. 322–23.) RCS attempted to schedule an IEP meeting in early September 2023, which had to be rescheduled due to a "medical emergency with S.L.'s advocate." (*Id.* at 320.) The IEP meeting was finally rescheduled for the end of November 2023 but was canceled when S.L.'s parents filed the due process complaint. (*Id.* at 322.)

[5] The parents did not seek a stay-put order in March 2023 when they filed their first due process complaint, but all claims related to that first complaint have been settled and dismissed.

[6] That complaint does not appear to be in this court's record.

[7] S.L. asserts that this date is incorrect and that she has been deprived of a FAPE since March 2023. As the ALJ observed, however, the Settlement Agreement entered on June 8, 2023 resolved all disputes pending as of that date.

1, Final Order 22.[8]) This conclusion was based on the ALJ's factual finding that, when S.L. returned to RCS in January 2023, after leaving Norris, RCS "should have focused on assessing S.L.'s needs and current skills, and how those needs and skills potentially changed from age 16 to almost 18, over almost two years, and with a change of placement." (*Id.* at 15.) The ALJ found that "it was impossible for RCS and the parents to make a data-based decision as to placement without this updated information." (*Id.* at 17.) However, although S.L.'s most recent FBA was almost two years old and a new FBA was clearly required under Tenn. Comp. R. & Regs. 0520-01-09-.24(3), RCS "capitulated to T.L.'s and [Sh.L.]'s insistence to only focus on S.L.'s placement" and did not conduct a new FBA. (*Id.* at 16.) As a result of that failure, the ALJ determined that S.L. is entitled to a "new [FBA], a new Behavior Improvement Plan, a safety plan, and a psychoeducational assessment (educational functional assessment)." (*Id.* at 22.)

At the same time, the ALJ found that the petitioners had failed to prove that S.L. was entitled to compensatory services, as the parents had repeatedly declined such services, and failed to prove entitlement to a residential placement "at this time." (*Id.* at 22; *see also id.* at 9, 15.) The ALJ also found as a factual matter that S.L.'s inability to attend Illuminate was "not due to any fault of RCS" and was instead due to Illuminate's inability to hire a one-on-one educational assistant for S.L. that would have permitted her to attend school for the 2023–2024 school year. (*Id.* at 17.) The ALJ further found that it was "solely Petitioners' fault that the [February 2023] IEP was not updated to reflect [the] change of placement" to Illuminate and that, "[w]hen the agreed-upon placement of Illuminate Academy fell through, S.L.'s placement defaulted to the placement on her IEP, which was Rutherford Academy." (*Id.* at 17.)

---

[8] The court refers to the Final Order by its original pagination rather than that assigned by the court's electronic filing system.

S.L., through her parents, filed the Complaint initiating this action in May 2024 to appeal that part of the ALJ's final ruling adverse to her. In particular, she challenges the ALJ's findings that it was "solely Petitioners' fault that the IEP was not updated to reflect" the change in placement to Illuminate and that her placement defaulted to Rutherford Academy after the Illuminate placement "fell through." (Compl. ¶¶ 45, 47.) The plaintiff contends that, contrary to the ALJ's determination, Rutherford Academy was not the placement on her last IEP; instead, the Settlement Agreement reflects that her "placement under the last agreed upon IEP—the stay put— is Illuminate (and before that, Siegel High)." (Compl. ¶ 50.)

Based on the Final Order and findings that RCS had violated the plaintiff's right to a FAPE, S.L.'s Complaint seeks the following relief:

> (1) Attorney's fees and reasonable expenses incurred in the due process and in this action, under the IDEA, 20 U.S.C. § 1415(i)(3) and 34 C.F.R. § 300.517. (Compl. ¶ 51; *see also* Final Order 23 n.12.)

> (2) Because S.L. is still not receiving a FAPE, "resulting in the substantive harm of lack of education," she "invokes 'stay put' to receive comparable services as Illuminate, including through the 1:1 aide." (Compl. ¶ 52.)

> (3) S.L. "seeks the appointment of an educational consultant at RCS's expense to assist in determining a placement", but, at the same time, she asserts that a residential placement (*i.e.*, boarding school) is most appropriate, based on the testimony provided at the due process hearing regarding S.L.'s current functioning, and she proposes that she be placed at Benedictine Academy, where she has been accepted for enrollment and where a spot is being held for her.[9] (Compl. ¶ 53.)

> (4) She seeks compensatory education for all the time she has been, and continues to be, denied a FAPE. (Compl. ¶ 54.)

In addition to claims under the IDEA, the plaintiff also asserts claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and § 504 of the

---

[9] The plaintiff provides no information about Benedictine Academy other than to assert that it is a residential placement. RCS states that it is a boarding school located in Maryland. (*See* Doc. No. 15, at 2 n.1 (citing https://benschool.org/).)

Rehabilitation Act, 29 U.S.C. § 794, for which she seeks declaratory and injunctive relief that is largely redundant to the relief sought under the IDEA. (*See* Compl. ¶¶ 55–58.)

Shortly after the pleadings closed, S.L. filed the present Motion to Invoke Stay Put. (Doc. No. 12.) This motion recognizes that the ALJ ordered an FBA, among other assessments,[10] but contends that an FBA cannot be "delivered with fidelity" outside a classroom setting, and the issue of which classroom has not been resolved. (*See id.* at 2 ("That is, to determine the functions behind maladaptive classroom behavior, one must have a classroom setting. Accordingly, Plaintiff brings the issue of stay-put to a head, securing the last agreed upon placement while her legal matter is pending[, in order to] allow S.L. to receive an education for the first time since March of 2023, with the IEP team obtaining appropriate data in an FBA to determine placement for the longer term.").)

The plaintiff argues that the Settlement Agreement constituted a bilateral agreement upon a "new placement at Illuminate Academy to be paid for by RCS." (Doc. No. 12, at 5.) When this placement fell through, "[t]his left S.L. without a placement, now since March of 2023." (*Id.*) She agrees with the ALJ's conclusion that a "bilateral change of placement to Illuminate Academy had occurred with the June 8, 2023 Settlement Agreement," but she disagrees with the assessment that "stay-put placement defaults to Rutherford Academy" after the placement at Illuminate fell through. (Doc. No. 12, at 5 (citing Final Agreement 17).) She characterizes the Rutherford Academy placement as a "unilateral placement" selected by RCS "*without first conducting an FBA*." (*Id.* at 6 (emphasis in original).) She argues, somewhat in contradiction to her acknowledgment that she was "left . . . without a placement" when the placement at Illuminate fell

---

[10] The plaintiff represents that the parties "have been working cooperatively on the psychological assessments ordered by the ALJ." (Doc. No. 12, at 7.)

through, that "[t]he stay-put is Illuminate Academy, the last bilaterally agreed upon placement." (*Id.* at 8.) And then, "[e]ven if Illuminate Academy 'fell through,' the previous bilaterally agreed upon placement would be Siegel High," rather than Rutherford Academy, since S.L. and her parents rejected the February 2023 IEP and the Rutherford Academy placement. (*Id.*) She insists that, "[w]ith stay put, a court is not being asked to create a placement" but to enforce the last agreed upon placement. (*Id.* at 8.) She seeks specifically to enjoin RCS from "insisting that Rutherford Academy is the stay-put placement." (*Id.* at 10.) She seeks to "return to Illuminate" and for the FBA to be conducted there "with appropriate 1:1 supports," and, if Illuminate is "somehow impossible, it must be replicated at Siegel High." (*Id.* at 11.)

In response, RCS argues that the plaintiff has failed to show that she is entitled to the requested relief. (Doc. No. 15.) It contends that (1) Rutherford Academy became S.L.'s "stay put" placement because her parents did not "file due process" within fourteen days of development of the IEP (*id.* at 5); (2) the Settlement Agreement did not change the stay-put placement to Illuminate; (3) even if Illuminate arguably became the stay-put placement as a result of the Settlement Agreement, when that placement became impossible, S.L.'s stay-put placement reverted to Rutherford Academy, not Siegel; (4) alternatively, S.L. has no current placement that qualifies for "stay-put" protection; (5) when a plaintiff is not entitled to a stay-put injunction, the court evaluates a request to change placement "as an ordinary request for preliminary injunctive relief" (*id.* at 22 (quoting *J.L. v. Williamson Cty. Bd. of Educ.*, No. 3:23-cv-00516, 2023 WL 4848826, at *3 (M.D. Tenn. July 28, 2023), *aff'd*, 2024 WL 3634456 (6th Cir. Aug. 2, 2024) (6th Cir. Aug. 2, 2024))); and (6) the plaintiff cannot satisfy the Rule 65 factors for preliminary

injunctive relief.[11]

In her Reply, the plaintiff continues to argue that RCS has failed to establish that it provided prior written notice of a proposed change of placement *after* the IEP meeting occurred, so the February 2023 IEP, which the plaintiff's parents rejected, never went into effect and Rutherford Academy never became S.L.'s placement; Illuminate constitutes the last agreed-upon placement; and the traditional preliminary injunction standard does not apply. In her Supplemental Brief, S.L. argues that the Sixth Circuit's recent opinion in *J.L.* "endorses the stay-put injunction analysis put forth by Plaintiff," specifically, that Illuminate should be considered her stay-put placement. (Doc. No. 22, at 3.)

## II.    LEGAL STANDARDS AND DISCUSSION

Under § 1415(j), "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed," subject to an exception not relevant here. A student is entitled to an "automatic statutory injunction" under § 1415(j), once she shows that: "(1) a proceeding conducted pursuant to 20 U.S.C. § 1415 is pending, and (2) the child has a then-current educational placement in which he must remain." *J.L. v. Williamson Cty. Bd. of Educ.*, No. 23-5704, 2024 WL 3634456, at *4 (6th Cir. Aug. 2, 2024) (6th Cir. Aug. 2, 2024) (internal quotation marks and alterations omitted) (citing 20 U.S.C. § 1415(j); *Davis ex rel. Davis v. Dist. of Columbia*, 80 F.4th 321, 324 (D.C. Cir. 2023)). That is, the moving party "need not show the traditionally required preliminary injunction factors to obtain relief." *Id.* (citations omitted). In a "typical case," "a school district attempts to change a

---

[11] The plaintiff does not argue that she can make the showing required for an ordinary preliminary injunction under Rule 65.

student's placement, the student objects to the change by filing an administrative complaint, and stay put mandates the placement until the dispute ends." *Id.* at *8 (quoting *A.D. ex rel. L.D. v. Haw. Dep't of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013)). Most often, the "current educational placement in which [the student] must remain" is the school she is already attending; the stay-put provision is intended to "preserve the *status quo*." *Id.* at *9 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 65 n.1 (2005) (Ginsburg, J., dissenting)). Determination of the current placement is usually not difficult, and courts rarely find that a student is not entitled to "stay put." *Id.* at *8.

*J.L.* presented unusual and difficult facts, causing the appellate court to consider closely what showing is required to establish such an entitlement. The Sixth Circuit identified three principles it found to be clearly relevant to the determination of what qualifies as a "then-current educational placement," based on its review of caselaw from other circuits. *Id.* at *7 & n.3. First, "a placement cannot be unilateral." *Id.* That is, "[a]greement between the parents and the local educational agency is a critical component of the 'then current educational placement.'" *Id.* "Second, the last-implemented IEP is *relevant* to the determination." *Id.* (emphasis added). Third, timing is also relevant, though not dispositive. *Id.* Some courts consider the "the moment when a due process complaint is filed" to be the "relevant juncture," while others "point to the last agreed-upon placement *before* the dispute arose." *Id.* (citations omitted).

While this distinction is not usually relevant, it mattered in *J.L.*, where "the last agreed-upon placement [was] not the same one that was actually functioning at the time J.L.'s parents brought the due process complaint." *Id.* That was because J.L.'s parents had "unilaterally changed his educational placement from the homebound instruction that the parties agreed on." *Id.* at *8. In *J.L.*, the court ultimately found that the plaintiff was not entitled to stay put under the particular

facts of that case, because there "was no agreed-upon educational placement actually functioning when J.L. filed his due process complaint," and the last agreed-upon placement was neither current nor effective. *Id.* at *9.

In the present case, similarly, S.L. was not in any educational setting—not even a unilateral, non-functioning setting, much less an "agreed-upon" and "actually functioning" one—either when (or just before) this dispute arose or at the time the plaintiff's due process complaint was filed in November 2023. The placement that would have been in effect was the one that both parties had agreed to, Illuminate Academy. Illuminate was clearly intended as a placement, irrespective of the parties' failure to update the IEP,[12] as the Settlement Agreement unambiguously provides that "Illuminate Academy will be the student's educational placement beginning Fall 2023" and that RCS would be "responsible for tuition at Illuminate Academy as long as the student is placed there, but no later than the student's 22nd birthday." (Settlement Agreement ¶ 2.) This placement fell through only because Illuminate, which is not a party to this lawsuit, could not find a suitable one-on-one educational assistant for S.L. Because of this failure, which apparently cannot be attributed to either party, S.L. never actually enrolled at Illuminate, so it was never a "functioning" placement, even if it was agreed upon. S.L.'s parents filed the due process complaint when it became apparent that the placement was not going to work, but Illuminate, having never been an effective, functioning placement, does not qualify as a stay-put setting, the plaintiff's arguments to the contrary notwithstanding.[13] Moreover, the court cannot order a private school that is not a party to this lawsuit to accept a student whom it does not choose to accept, and "stay put" certainly

---

[12] The ALJ attributed the failure to update the IEP to the parents, but the law is clear that neither party can unilaterally update an IEP.

[13] It is unclear why her parents did not seek a stay put order at that time, though it is equally unclear whether doing so would have made a difference, since, even at that time, she was not in a functioning, agreed-upon placement and had not been in one for nearly a year.

does not authorize the court to conjure a substitute placement. By requesting that the court "enforce" stay put at Illuminate, S.L. is actually asking the court to create a placement rather than to simply enforce an existing *and functioning* placement.

The ALJ concluded that the "default" placement, after Illuminate fell through, was Rutherford Academy, as that was the school designated on S.L.'s last IEP. (Final Order 17.) That finding was clearly incorrect, contrary to RCS's argument, as the parties never agreed upon that placement. Instead, S.L.'s parents objected to it and filed the due process complaint that resulted in the Settlement Agreement. Although RCS contends that the due process complaint was filed more than fourteen days after the parents received notice of the IEP and, therefore, that the IEP went into effect despite S.L.'s parents' objections, the court finds that RSC waived any procedural objection to the due process complaint on timeliness grounds, as the parties settled that due process complaint and agreed to the dismissal of both the administrative claim and the federal lawsuit. Moreover, even if the February 2023 IEP had gone into effect, Rutherford Academy was never a "functioning" placement, anymore than Illuminate was, as S.L. never set foot inside the school. Rutherford Academy, like Illuminate, does not qualify as a stay-put placement.[14]

Another potential stay-put option is Siegel High School, a public high school within RCS. Siegel was the last agreed-up placement, and, as such, it satisfies the first and most important of the relevant factors identified in *J.L.* However, the IEP placing S.L. at Siegel went into effect in February 2022—two and one-half years ago, when S.L. was seventeen years old—and expired in February 2023. Moreover, even while the IEP was in effect, Siegel does not appear to have

---

[14] The court further notes that Rutherford Academy, like Illuminate, is a private school and not a party to this lawsuit. Even if Rutherford Academy qualified as a "stay put" placement and had, at one point, agreed to accept S.L. for enrollment, the court does not have the power to order it to accept her now.

functioned well as a placement. S.L.'s parents withdrew S.L. from Siegel and unilaterally placed her at Norris Academy for most of the period covered by the IEP. And once S.L. returned to Siegel in January 2023, just before the IEP expired, it again became apparent that the placement was not functioning well, as neither party was satisfied with it and both parties agreed that a different placement was required[15]—they just could not agree on what the different placement should be. If the plaintiff had sought "stay put" at the same time she filed her first due process complaint in March 2023, she clearly would have been entitled to stay put at Siegel during the pendency of those proceedings, but the parents did not seek stay put at that time—further evidence of the fact that neither party believed Siegel to be an appropriate placement.

In addition, even though Siegel High was the last agreed-upon placement, and even if it arguably "functioned" as a placement for some period of time, it was not S.L.'s "then-current educational placement in which [she] [might] remain," either at or just before this dispute arose or at the time S.L. filed the underlying due process complaint. "Stay put" at Siegel, that is, would not operate to preserve the *status quo*, as S.L. has not attended Siegel for nearly one and one-half years, and the parties agreed (futilely, as it turned out) to a different placement in the interim. The IEP placing S.L. at Siegel expired in February 2023, and no effective IEP has been implemented since then.

Finally, the only other potential option for stay put would be homebound services or other compensatory services. However, the record makes it clear that T.L. and Sh.L. refused homebound and compensatory services after the Illuminate placement fell through, so even homebound

---

[15] When asked during the due process hearing whether the parents' attorney "repeatedly stated [at the IEP meetings in January 2023] that Siegel High School was an inappropriate placement and we needed to be looked at other placement," T.L. responded: "Everyone stated that, Rutherford County Schools included. . . . He stated it, we stated it, you stated it." (Doc. No. 15-3, Hr'g Tr. 369.)

services would not qualify as the "then-current educational placement" in which S.L. could have remained during the pendency of these proceedings.

In sum, and perhaps unfortunately, S.L., like the plaintiff in *J.L.*, "has failed to demonstrate that [s]he has a 'then-current educational placement' to remain in." *J.L.*, 2024 WL 3634456, at *8. There is no *status quo* placement to be preserved. Certainly, it would be to S.L.'s advantage if her parents and RCS could promptly agree on an interim placement so that an FBA could be conducted and an appropriate long-term placement determined. The court, however, has no authority at this juncture to order a new placement under § 1415(j). *See id.* at *12 ("[The court's] task in this case is not to determine the best outcome for [the plaintiff's] education. Federal judges possess neither the authority nor the expertise to make that call.").[16] While S.L. clearly should be in school *somewhere*, the court has no authority at this juncture to unilaterally decide where she should go.

## III.    CONCLUSION

For the reasons set forth herein, the plaintiff's Motion to Invoke Stay Put Placement Through Preliminary Injunction (Doc. No. 12) will be denied, insofar as she requests that the court order her placement at Illuminate Academy or, alternatively, at Siegel High School. The motion will be granted only insofar as the plaintiff also seeks to "enjoin[ RCS] from insisting that Rutherford Academy is the stay-put placement." (*Id.* at 10.) An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

_____

[16] Although neither party argues that S.L. is seeking "initial admission to a public school," her situation is arguably analogous to that of a new student seeking admission to public school, in which case her zoned public school would be the stay-put placement to which she would be entitled under § 1415(j).